**E. V. BROGAN et al., Plaintiffs,**

**v.**

**The PENNSYLVANIA RAILROAD COMPANY, et al., Defendants.**

**Civ. A. No. 62 C 1661.**

United States District Court
N. D. Illinois, E. D.

Oct. 8, 1962.

Burke Williamson, Adams, Williamson & Turney, Chicago, Ill., Harry Wilmarth, Elliott, Shuttleworth & Ingersoll, Cedar Rapids, Iowa, for plaintiffs.

Robert H. Bierma, David L. Wilson, Chicago, Ill., for defendant Pennsylvania R. Co.

Sidley, Austin, Burgess & Smith, Chicago, Ill., for Pullman Co.

PERRY, District Judge.

### Findings of Fact

1.  The jurisdiction of this Court is invoked by the plaintiffs under Sections 28 U.S.C. § 1336, 28 U.S.C. § 1337, 49 U.S.C. § 5, 49 U.S.C. § 9, and 49 U.S.C. § 16, par. (12).  The amount involved

in this controversy exceeds the sum of $10,000.00, exclusive of interest and costs. The plaintiffs are citizens and residents of the State of New York. The defendant The Pennsylvania Railroad Company is a Pennsylvania corporation and the defendant The Pullman Company is an Illinois corporation.

2. Plaintiffs are four conductors of the defendant The Pullman Company (hereafter called Pullman) working on the sleeping car lines of the defendant The Pennsylvania Railroad Company (hereinafter called the Pennsylvania). The plaintiffs sue for themselves individually and for all others similarly situated (hereafter called Pullman conductors).

3. The Pennsylvania and Pullman are corporations which do business in the State of Illinois and each has an office and place of business in Chicago, Illinois. Each is a common carrier engaged in interstate commerce and is subject to Part I of the Interstate Commerce Act.

4. The Pennsylvania and most other railroads in the United States own various numbers of shares of stock of Pullman, representing in the aggregate all of the outstanding stock of Pullman, all of said stock having been acquired in 1947 pursuant to orders of the District Court of the United States for the Eastern District of Pennsylvania entered in Civil Action No. 994, in United States of America v. Pullman Company et al., 64 F.Supp. 108. These orders were entered after the Court had theretofore entered Findings of Fact, among which were the following:

"65. The Pullman Company furnishes sleeping cars and sleeping car service. Its cars are hauled by the railroads, and its patrons are the passengers of the railroads on whose lines its cars are operated. Sleeping car service is a service that the railroads must render or have rendered by others in connection with their passenger transportation service.

"66. The Pullman Company has always held itself out as a company furnishing complete sleeping car service, which consists of furnishing the necessary facilities, supplies and equipment, as well as supervision and the personal service of attendants. It has never held itself out to perform service in sleeping cars owned by others."

5. The Pennsylvania owns 118,298 shares of the total of 731,350 shares of Pullman now outstanding.

6. The contractual, financial, and other arrangements between the railroads and Pullman are governed by Orders of the Interstate Commerce Commission (hereafter called the Commission) entered in Docket 29592. The Commission, in its Report and Order in said docket, dated May 6, 1947, provided for the conduct of sleeping car service on a uniform and nondiscriminatory basis and approved and authorized a pooling of service and earnings subject to the conditions set forth in said Order. The Report of the Commission referred to in said Order is reported in 268 I.C.C. 473.

7. By a Supplemental Application dated June 3, 1947, the railroads, including the Pennsylvania, sought a revision in the pooling of service and earnings then existing and prayed that the Commission approve and authorize a proposed "Uniform Service Contract" and the pooling of service and earnings to result therefrom. On August 22, 1949 the Commission filed and entered an Order in said docket approving a pooling of service and earnings, as modified under the proposed Uniform Service Contract, subject to the conditions prescribed in its prior Report. The Report of the Commission referred to in said Order is reported in 276 I.C.C. 5. Except as modified by an Order of the Commission entered on or about April 29, 1955, reported in 294 I.C.C. 703, the Orders of the Commission aforesaid are still in full force and effect. Pullman now operates substantially all of the sleeping car services performed on the lines of the Pennsylvania and on most other rail-

roads under and in accordance with the Uniform Service Contract, dated March 23, 1949, effective July 1, 1949, as amended and revised from time to time.

8. Pullman has not been a party, as applicant or otherwise, to the proceedings before the Commission in I.C.C. Docket No. 29592 concerning the pooling of service and of gross or net earnings by certain common carriers by railroad under and pursuant to the Uniform Service Contract.

9. No officer or director of Pullman is now, or has been since the year 1947, also an officer or director of the Pennsylvania or any other railroad company offering sleeping car service to the public on its lines.

10. The duly designated and authorized representative of plaintiffs and the Pullman conductors, under the provisions of the Railway Labor Act, is the Order of Railway Conductors and Brakemen, the successor organization of the Order of Railway Conductors of America, (hereafter called the Organization), and said Organization is not the duly designated and authorized representative of any craft or class of employees of the Pennsylvania under said Act.

11. In July of 1962 the Organization heard rumors that the Pennsylvania and Pullman had entered into an agreement, to become effective October 1, 1962, whereby pullman cars would be operated without the services of a Pullman conductor or a Pullman porter, but with all other services being furnished by Pullman. Officials of the Organization wrote to Pullman for details, but none was furnished.

12. After the filing of the Complaint herein on August 29, 1962, the submission by the plaintiffs of interrogatories, the taking by the plaintiffs of depositions, and the filing by the defendants of Answers, the plaintiffs learned the details of a new arrangement scheduled to begin October 1, 1962, by the Pennsylvania and Pullman, which had been requested by the Pennsylvania on May 29, 1962, for the operation of sleeping car service on the lines of the Pennsylvania, as follows:

"Joint-lines sleeping car service", that is, service which begins, is performed, and ends, on the lines of the Pennsylvania and one or more additional railroads will not be affected;

On "local sleeping car lines," that is, service which begins, is performed, and ends on the lines of the Pennsylvania, the Pennsylvania and Pullman each will perform a portion of the service, as follows:

Pullman to furnish the sleeping cars, properly equipped, and to furnish with linen and other supplies;

Pullman to perform electrical and air conditioning repairs on the cars and other yard and shop repairs; and

Pullman to perform the cleaning of the interior of the cars.

Pennsylvania to provide the porter, to arrange for the train conductor to collect sleeping car tickets, to handle collections, and to handle the control and distribution of sleeping car revenues;

No Pullman conductors to be used;

All sleeping car revenues to be retained by the Pennsylvania;

Pullman no longer to pay Pullman conductors, Pullman porters, or to make certain other disbursements now required in the pooling arrangement set up by the Uniform Service Contract approved by the Interstate Commerce Commission.

13. On September 11, 1962, the Pennsylvania and Pullman executed an Amendment to Uniform Service Contract in which they agreed that the performance by Pullman of services on all lines of the Pennsylvania, on and after October 1, 1962, shall be governed by the provisions of the said Uniform Service Contract as theretofore amended, and as further amended by the amendment of September 11, 1962. Such latter amendment was intended to make all changes

in the Uniform Service Contract which the Pennsylvania and Pullman deemed necessary to carry out the revised method of operation heretofore described in paragraph 12 hereof.

14. Neither the Pennsylvania nor Pullman has applied to the Commission, or intends to apply to the Commission, for its authorization and approval of the arrangement between the Pennsylvania and Pullman to be effective October 1, 1962. Neither Pullman nor the Pennsylvania asked for or received the consent of any railroads in connection with said arrangement.

15. If the proposed arrangement becomes effective on October 1, 1962 the effect on Pullman employees will be as follows:

Non-contract employees (employees who do not work under a collective bargaining agreement) who will lose jobs are supervisors, office help, and storeroom employees;

Contract employees (employees who work under collective bargaining agreements) who will lose employment are clerks, porters (about 220), and Pullman conductors (about 53);

Some of the porters will be employed by the Pennsylvania;

None of the Pullman conductors will be employed by the Pennsylvania, and about 53 regular jobs for Pullman conductors will be permanently lost.

16. The average wage of a regularly assigned Pullman conductor is some $7,000 per year.

17. Pullman presently performs services in connection with approximately 216 sleeping cars on the lines of Pennsylvania. Of these 115 are in local service, the remainder in joint service.

18. The Pullman conductors, in the performance of their duties on sleeping cars operated on the lines of the Pennsylvania and other railroads, are subject to the rules, rates of pay and working conditions set forth in a collectively bargained agreement executed by Pullman as employer and by the Organization as the statutory representative of the employees, effective September 21, 1957.

19. None of the Pullman conductors does now or has previously received any so-called "fringe benefits" under employment contracts to which the Pennsylvania is a party, either in the form of vacation pay or allowance, supplemental pension payments upon retirement, group life insurance, accident and health insurance, or otherwise, some or all of which benefits are allowed and paid by the Pennsylvania to the members of the crafts or classes of its employees working on its passenger trains in connection with the operation or servicing thereof.

20. The plaintiffs have not proffered evidence other than that which may be contained in the documents which they offered and were received that the Pennsylvania and Pullman are engaged in concerted and collusive action for the unlawful purpose of devising ways and means to dispense with the services of the Pullman conductors while defendants otherwise continue to carry on sleeping car service as a joint enterprise between themselves.

20.A The defendant the Pennsylvania has attempted to utilize its position as a dominant shareholder in Pullman to accomplish a revision of the existing Uniform Service Contract as well as a revision of the existing pooling agreement—and all without resort to and approval by the Interstate Commerce Commission as required by statute. If countenanced and permitted, such proposed circumvention of prescribed procedure would set a pattern whereby the railroad-shareholders of Pullman could nullify the provisions of and benefits intended by agreements entered into with its employes.

21. Defendant Pullman requested defendant Pennsylvania to reconsider the notice contained in Pennsylvania's letter of May 29, 1962, and to permit Pullman to continue performance of all sleeping car services on the lines of Pennsylvania, but defendant Pennsylvania re-

fused to reconsider its decision. Pullman in good faith believed that it was legally obligated to comply with Pennsylvania's request of May 29, 1962.

Conclusions of Law

1. This Court has jurisdiction of the subject matter and of the parties.

2. Plaintiffs bring this action on behalf of other similarly situated Pullman conductors who constitute a class so numerous as to make it impracticable to bring them all before this court. Plaintiffs fairly and adequately represent said class. This action is properly brought as a true class suit by plaintiffs on behalf of Pullman conductors.

3. The orders of the District Court of the United States for the Eastern District of Pennsylvania entered in Civil Action No. 994, in United States of America v. Pullman Company et al., 64 F.Supp. 108, provide for only the following type of Partial Operation by Pullman for any railroad:

Pullman to supply service in sleeping cars, whether or not owned by the railroad; or

Pullman to supply the sleeping cars and to supply the service in the sleeping cars on specified lines of the railroad even though the railroad independently operates sleeping cars on other of its lines.

There is nothing in such orders which requires Pullman to supply *part* of service in the sleeping cars.

4. The District Court orders referred to in paragraph 3 of these Conclusions of Law do not require that Pullman furnish to the Pennsylvania the type of partial service demanded by the Pennsylvania.

5. The orders of the Commission referred to in paragraphs 6 and 7 of the within Findings of Fact require only that Pullman furnish to a requesting railroad the *usual service* in sleeping cars, and such orders do not require that Pullman furnish to such railroad less than the usual service in such cars. As so used, the *usual service* includes both a Pullman conductor and a Pullman porter.

6. The orders of the Commission referred to in paragraphs 6 and 7 of the within Findings of Fact do not require that Pullman furnish to the Pennsylvania the type of partial service demanded by the Pennsylvania.

7. The District Court orders referred to in paragraph 3 of these Conclusions of Law recognized the jurisdiction of the Commission over contracts between carriers under Section 5(1) or other provisions of the Interstate Commerce Act.

8. The Commission, pursuant to application of the railroads which bought the stock of Pullman, approved a pooling arrangement between the railroads which used Pullman which provided that revenues, expenses, and a 3% return on Pullman's investment, allocated to the operations on the lines of the railroad under the Uniform Service Contract, would be made as provided in Appendix A of such Contract. The term "revenues" included sale of sleeping car accommodations in cars operated in local service and cars operated in joint service. Against this revenue would be charged taxes, rental for cars, and operating expenses divided into some ten general cost groups, including those of conductors and porters. Certain earnings would be divided between Pullman and the railroad to whose sleeping car business the earnings were attributable, while other earnings would be distributed to the railroads holding the Pullman stock.

9. Under the method used in the Uniform Service Contract of assigning expenses to the railroads there is not an exact segregation of actual expenses to each railroad, as there necessarily remains an averaging of expenses within the cost groups. This averaging of expenses and other operations of the Uniform Service Contract constitute a pooling of earnings within the meaning of Section 5(1) of Part I of the Interstate Commerce Act.

10. The Uniform Service Contract also provides for a form of operation of their sleeping car service by the rail-

roads which constitutes a pooling of service within the meaning of Section 5(1) of Part I of the Interstate Commerce Act.

11. All the changes which the Pennsylvania and Pullman purpose to make effective on October 1, 1962 are to be made by them *within* the provisions of the Uniform Service Contract.

12. Changes which the Pennsylvania and Pullman propose to make effective on October 1, 1962 constitute changes in the pooling of revenues and changes in the pooling of services as between the Pennsylvania and other railroads using Pullman, within the meaning of Section 5(1) of Part I of the Interstate Commerce Act.

13. The Pennsylvania and Pullman are required to obtain the formal approval of all the railroads using Pullman prior to making effective the changes which the Pennsylvania and Pullman propose to make effective on October 1, 1962.

14. The Pennsylvania and Pullman are required to obtain the formal approval of the Commission prior to making effective the changes which the Pennsylvania and Pullman propose to make effective on October 1, 1962.

15. A paragraph of the District Court Orders referred to in paragraph numbered 4 of the within Findings of Fact provided that such order is made without prejudice to the rights of the employees of Pullman "under existing contracts and practices." No order of the Commission thereafter entered has taken away from the employees whatever rights they had at the time of the entry of the District Court Orders "under existing contracts and practices."

16. Pullman conductors are persons who will be injured by the failure of carriers to observe the provisions of Part I of the Interstate Commerce Act if the Pennsylvania and Pullman place their proposed new operation in effect on October 1, 1962, and such Pullman conductors may recover damages from such carriers as provided in sections 8 and 9 of Part I of the Interstate Commerce Act (49 U.S.C. §§ 8 and 9).

17. The arrangement to become effective October 1, 1962, between defendant Pennsylvania and defendant Pullman does not constitute an arrangement by defendant Pennsylvania, by defendant Pullman or by both defendants jointly to lease or contract to operate the properties, or any part thereof, of another carrier, within the meaning of Section 5(2) of the Interstate Commerce Act, and, as such, the said arrangement does not require the prior approval and authorization of the Interstate Commerce Commission under said Section.

18. This case does not involve or grow out of a labor dispute within the meaning of section 1 of the Norris-LaGuardia Act (29 U.S.C. § 101), and the Norris-LaGuardia Act (29 U.S.C. § 101 and following) does not withdraw from this Court jurisdiction to grant the injunctive relief requested in the Complaint.

19. The allegations of Count IV of the Complaint state a claim in tort which is not referrable to the National Railroad Adjustment Board within the provisions of section 3 of the Railway Labor Act (45 U.S.C. § 153).

20. The plaintiffs have not proved that the Pennsylvania and Pullman are engaged in concerted and collusive action for the unlawful purpose of devising ways and means to dispense with the services of Pullman conductors while defendants otherwise continue to carry on sleeping car service as a joint enterprise between themselves.

21. The equities are with the plaintiffs, and an appropriate judgment should be entered for this purpose.

## FINAL DECREE

This cause coming on to be heard on the Complaint for Declaratory Judgment and for Injunction; Answer filed by The Pennsylvania Railroad Company (hereafter called the Pennsylvania), and Answer filed by The Pullman Company (hereafter called Pullman), and the court

having heard the testimony and having considered the written evidence and the depositions, offered by the parties and received in evidence, and having considered the briefs filed by the parties and having heard the arguments of counsel; and

The court having tried this action upon the facts without a jury and having heretofore found the facts specially and having heretofore stated separately its conclusions of law thereon, and having directed the entry of an appropriate judgment,

It is hereby ORDERED, ADJUDGED AND DECREED that:

1. The Amendment to Uniform Service Contract executed on September 11, 1962 by the Pennsylvania and Pullman in which they agreed that the performance by Pullman of services on all lines of the Pennsylvania on and after October 1, 1962, shall be governed by the provisions of the Uniform Service Contract dated March 23, 1949, as theretofore amended, and as further amended by the said amendment of September 11, 1962, is in disobedience of Orders of the Interstate Commerce Commission theretofore entered in its Docket 29592.

2. The Pennsylvania and Pullman, their officers, agents, employees, attorneys, and all others acting in concert or in participation with them, are permanently restrained and enjoined from failing and neglecting to obey the Orders of the Interstate Commerce Commission heretofore entered in its Docket 29592 by putting into effect the Amendment to Uniform Service Contract executed on September 11, 1962, without approval of the Commission.

3. The Amendment to Uniform Service Contract executed on September 11, 1962 by the Pennsylvania and Pullman in which they agreed that the performance by Pullman of services on all lines of the Pennsylvania, on and after October 1, 1962, shall be governed by the provisions of the Uniform Service Contract dated March 23, 1949, as theretofore amended, and as further amended by the said amendment of September 11, 1962, constitutes an agreement for the pooling or division of traffic, or of service, or of gross or net earnings, or any portion thereof, to become effective on October 1, 1962, without specific approval by order of the Interstate Commerce Commission, and therefore is in violation of Section 5(1) of Part I of the Interstate Commerce Act (49 U.S.C. § 5(1)).

4. The Pennsylvania and Pullman, their officers, agents, employees, attorneys, and all others acting in concert or in participation with them, are permanently restrained and enjoined from failing to comply with Section 5(1) of Part I of the Interstate Commerce Act (49 U.S.C. § 5(1)) by putting into effect the Amendment to Uniform Service Contract executed on September 11, 1962, without approval of the Commission.

5. Nothing in the Findings of Fact or Conclusions of Law entered herein on October 5, 1962 or in this FINAL DECREE shall be deemed to preclude the Interstate Commerce Commission from deciding that its outstanding orders in its Docket 29592 would not be violated by defendants' Amendment to Uniform Service Contract executed September 11, 1962, or that its specific approval in connection with said Amendment under Section 5(1) of the Interstate Commerce Act is not required.

6. In the event the Interstate Commerce Commission decides that its said outstanding orders have not been violated, or that its specific approval of defendants' said Amendment is not required, or in the event the Commission specifically approves said Amendment or the pooling resulting therefrom, then in any such event the injunction contained in this FINAL DECREE shall expire automatically twenty (20) days after the Commission's action becomes effective.

7. Judgment is entered for the plaintiffs and against the defendants, with costs to the plaintiffs and against the defendants.