**PACIFIC FRUIT EXPRESS COMPANY,**
**a corporation, Plaintiff,**

v.

**AKRON, CANTON & YOUNGSTOWN**
**RAILROAD COMPANY, et al.,**
**Defendants.**
**No. 44601.**

United States District Court,
N. D. California.
March 2, 1973.

Herbert A. Waterman, Charles W. Burkett, Michael A. Smith, San Francisco, Cal., and Byron D. Strattan, Howard E. Roos, Omaha, Neb., for plaintiff Pacific Fruit Express Co., a corporation.

Bernard A. Gould, Daniel M. O'Donoghue, Daniel S. Linhardt, Bureau of Enforcement, I. C. C., Washington, D. C., for intervening plaintiff I. C. C.

James L. Browning, Jr., U. S. Atty., William B. Spohn, Asst. U. S. Atty., San Francisco, Cal., for U. S. realigned as plaintiff.

Gordon Johnson, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., for defendant Akron, Canton & Youngstown R. Co., etc.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

This is a civil action for damages brought by Pacific Fruit Express (PFE) seeking to recover from 90 mideastern, eastern and southern railroad common carriers, an amount alleged to be in excess of 12.5 million dollars, representing compensation claimed to be due PFE for the use by defendant railroads of plaintiffs' mechanical protective services supplied them through PFE refrigeration cars moving over the lines of defendants in the transportation of perishable commodities; PFE also seeks an injunction to compel defendants to comply with a certain order of the Interstate Commerce Commission (I.C.C.) hereafter referred to.

The case is now before the court on plaintiffs' motion and defendants' counter motion for summary judgment on the issue of liability as related to both damages and injunction. With respect to injunctive relief the United States, realigned as a party plaintiff herein, and I.C.C., itnervenor as a party plaintiff, join in the PFE motion.

PFE is a car-line company, wholly owned by the Union Pacific Railroad Company (UP) and Southern Pacific Transportation Company (SP) engaged in the business of furnishing to railroads refrigerated cars containing mechanical refrigeration units and supplying mechanical protective service for perishable commodities against heat and cold.

The use of PFE cars on defendants' lines is occasioned by the fact the UP and SP, as originating carriers on eastbound shipments, select these PFE cars to transport perishables to the East. Defendant railroads as common carriers are required by law (§§ 1(3)a and 1(4)

ICA) to accept and do accept such cars at interchange points to transport perishables over their lines to ultimate destinations and the units in the cars are used by them to supply mechanical protective service.

The complaint charges in substance and effect that PFE has provided defendants with this protective service but that defendants have failed and refused to enter into certain contracts to pay amounts sufficient to cover PFE's costs of providing such service despite the fact that such contracts were ordered on August 27, 1962, by the Interstate Commerce Commission in its order entitled "Contracts for Protective Services," (Ex Parte 137, 318 I.C.C. III, 49 C.F.R. 105.2 (1962)) issued pursuant to the Interstate Commerce Act, 49 U.S.C. § 1(14)(b), (that order is attached as an exhibit to and incorporated into the complaint).

Alleging that its receipts from defendant railroads in the past and up to the present time for said protective service, under a so-called Division Sheet 7 arrangement [1] among the defendant railroads, have been insufficient to cover the costs thereof, PFE seeks to recover from each of the defendant railroads its share of the costs of said service—essentially the difference between the payments made to PFE under that Division Sheet 7 arrangement and the amount PFE would have received if defendants had entered into the contracts as required by the I.C.C. order of August 27, 1962.

So far as damages are concerned the action is brought pursuant to 49 U.S.C. § 8 (§ 8 of the I.C.C. Act), 49 U.S.C. § 9 (§ 9 of the Act).

Section 8 provides that in case any common carrier does anything prohibited by the Act or omits to do anything required by the Act, the carrier shall be liable to the person injured for the full amount of damages sustained in consequences thereof, together with reasonable counsel fees; Section 9 provides that any person claiming to have been so damaged may make complaint either to the I.C.C. or may bring suit in District Court.[2] PFE also seeks recovery of its reasonable costs upon a quantum meruit theory to be hereafter considered.

So far as injunctive relief is concerned the action is brought pursuant to 49 U.S.C. § 16(12) which provides that, if any carrier fails or neglects to obey any order of the I.C.C. any party injured thereby may apply to the District Court for the enforcement of the order and the court may enforce obedience by injunction or other proper process.[3]

In its Order of August 27, 1962, Ex Parte 137 (1962), Contracts for Protective Services, 318 I.C.C. III, above mentioned, I.C.C. sought to determine, pur-

1. This Division Sheet 7 is an arrangement among the railroads themselves, issued by their National Perishable Freight Committee as agent for substantially all railroads. Under its provisions, 80% of the revenue collected by the railroads under their respective tariffs for mechanical protective service are paid by the participating railroads to the railroad initially handling the shipment which percentage is in turn paid over to the car owner, like PFE, for the mechanical refrigeration units in its cars. The remaining 20% of the tariff revenue is divided among all the railroads participating in the particular shipment. This is the basis on which PFE has been compensated.

2. Recovery of damages under Sec. 8 for violations of the Interstate Commerce Act has been sustained in a number of cases, including the following: Nemitz v. Nor-folk & W. Ry. Co., 436 F.2d 841 (6th Cir. 1971), aff'd in 404 U.S. 37, 92 S. Ct. 185, 30 L.Ed.2d 198 (1971). (Summary judgment granted under Sec. 8 for damages arising from violations of the Act and an I.C.C. order;) Brogan v. Pennsylvania R. R. Co., 211 F.Supp. 881 (N.D. Ill.1962). (Damages awarded under Sec. 8 for violations of the Act and an I.C.C. order;) Wright v. Chicago, B. & O. R. R. Co., 223 F.Supp. 660 (N.D.Ill.1963). (Compensatory and punitive damages for violation of the Act;) Minneapolis & St. L. Ry. Co. v. Pacific Gamble Robinson Co., 215 F.2d 126 (8th Cir. 1954). (Damages for violation of the Act.)

3. Both *Nemitz*, supra and *Brogan*, supra, granted injunctions to an injured party under Sec. 16(12), as well as damages under Section 8.

suant to 49 U.S.C. § 1(14)(b), the justness and reasonableness of charges for the use of mechanical refrigeration units and protective services as contained in various contracts and arrangements between railroads.

The Commission found that under the Division Sheet 7 arrangement, PFE and other car-lines furnishing mechanical protective service assume all of the operational costs of the mechanical units such as fuel, inspection and repairs— and that the 80% of tariff revenue received by the car owner bore no relation to these costs, (318 I.C.C. at 114–115) and that PFE expense of furnishing mechanical protective service exceeded by a substantial amount its revenue received for such service under Division Sheet 7.

The Commission ordered (Par. (a)(b) (c)) that all railroads then receiving protective services under any contracts, agreements or arrangements should submit for approval to I.C.C. on or before 120 days from the effective date of the order new or superseding contracts covering protective services performed under contracts then on file with I.C.C. as well as those performed under Division Sheet 7—said new contracts to supersede all prior contracts, including Division Sheet 7, and to conform with other provisions of the order [i. e., subsections (b)(c)(d)(e)(f) and (g)]; the charge for each protective service to yield to the person performing such service no less than the cost (to which might be added a reasonable profit not in excess of 6% Par. [c]) for performing the service, cost to be determined as set forth in subsection (d)(i) and (ii) of the order.

The order also provided (Par. (e)) that in the event the person rendering the protective service shall not recover costs, such person should bill the railroads on a proportionate basis for the loss.

The order also provided that those contracts *then on file with the Commission*, which had not been approved theretofore be, and they were thereby approved *upon the condition* that they shall be superseded by new contracts filed in accordance with the above regulations.[4]

PFE alleges that since 1962 it has repeatedly sought such contracts but that defendants have failed and refused to so contract or to pay PFE its costs incurred in the supplying of mechanical protective service.[4(a)]

PFE contends that defendants' failure and refusal to enter into such contracts for the supplying of mechanical protective service, and to obtain I.C.C. approval thereof, is a violation of Section 16(7) and Section 1(14)(b).

Section 16(7) provides that it shall be the duty of every common carrier to observe and comply with orders of the Commission; Section 1(14)(b) makes it

---

4. I.C.C. has taken no further action in the Ex Parte 137 proceedings, although, in March, 1963, the owning and contracting lines of the American Refrigerator Transit Co., a car-line company, petitioned the Commission for clarification and/or modification of the 1962 order requesting, essentially, answers to two questions: (1) does the 1962 order mean that the furnishing of mechanical refrigerator units is a protective service within section 1(14)(b), and (2) does the 1962 order mean that Division Sheet 7 is not in compliance with the order and must be superseded. The Commission denied the petition for the stated reason that sufficient grounds for review of the order were not presented; also, shortly after the filing of the instant action in 1965, PFE's parent companies petitioned I.C.C. for a cease and desist order directing defendants to pay their share of PFE's costs as directed by the 1962 order; the petition raised contentions identical to those raised herein by PFE, but the I.C.C. denied the petition for the stated reason that the basic issue was substantially the same as that in this present action.

4(a). An affidavit of the Secretary of the I.C.C. states: ". . . that after diligent search none of the parties defendant in the above-entitled matter have submitted contracts for rail protective services with the Pacific Fruit Express Company as required by the Commission decision in Ex Parte 137, Contracts for Protective Services, 318 I.C.C. III (1962)."

unlawful for any common carrier to make any arrangement for the furnishing of protective service against heat or cold unless and until such arrangement has been submitted to and approved by the Commission as just, reasonable and in the public interest.[5]

It is upon this statutory basis that PFE seeks damages from 1964, together with interest thereon, attorneys' fees and costs.

PFE also contends that under the circumstances appearing from the record herein, defendants are liable to it on a quantum meruit theory for the reasonable value of the mechanical protective service it has furnished to defendants—measured by the same standard of damages it asserts in connection with liability premised upon violations of the Interstate Commerce Act.[6]

## DEFENDANTS' CONTENTIONS

Defendants have contended in this suit (1) that the activities of PFE do not constitute the furnishing of mechanical protective service to defendants as that term was used in law and in the I.C.C. order of August 27, 1962; (2) that, since the I.C.C. temporarily approved the already mentioned Division Sheet 7, along with other then existing contractual arrangements, Division Sheet 7 is still the only contractual arrangement between PFE and the railroads and remains so until I.C.C. makes an explicit order disapproving that arrangement as not fulfilling the requirements of Section 1(14)(b); (3) that in any event the order of August 27, 1962 is not self-executing and did not give to PFE any substantive right to directly recover its alleged losses from the defendant railroads since such right would arise only from such contracts as might be actually entered into between PFE and the respective railroads; (4) that the order of August 17, 1962 is vague and ambiguous.

After having considered the record herein, and after having held hearings on the evidentiary material presented by the parties in support of or in opposition to the respective motions for summary judgment, and having received oral argument and briefs thereon, this court concluded that the issues raised questions concerning the I.C.C. order of August 27, 1962 and that, therefore, no rulings or further proceedings in this suit should be made or taken pending a referral of certain questions to the I.C.C., the agency having primary jurisdiction in this matter and special expertise with respect thereto, for the further assurance of this court in making its own findings and conclusions. See, Marnell v.

---

5. Apart from the violations of Sec. 1(14) (b) and 16(7), PFE also asserts defendants have violated Sec. 1(4). Under this provision, defendants have a duty "to provide and furnish transportation," and 49 U.S.C. Sec. 1(3)(a) (Section 1(3)(a) of the Act), includes "protective service" as part of "transportation." Section 1(4) also requires defendants to provide, in connection with their through routes, "reasonable facilities for operating of such routes" and "reasonable compensation" for those who provide such facilities as mechanical protective service.

6. In support of this theory of suit PFE relies on Section 1 of the Restatement of Restitution) "A person who has been unjustly enriched at the expense of another is required to make restitution to the other"), and Baltimore & O. R. Co. v. New York, N. H. & H. R. Co., 196 F. Supp. 724 (D.Ct.N.Y. (1961) where the court held that the owners of railroad equipment (freight cars) were entitled to reasonable compensation from the users of that equipment, based on the cost of ownership, on a quantum meruit basis, saying: " . . . Plaintiffs are entitled to attempt to collect the rate established as reasonable and, if declared unreasonable, to be made whole on a quantum meruit basis. . . ." (196 F.Supp. at 736). In Chicago, B. & O. R. Co. v. New York S. & Western R. Co., 332 I.C.C. 176 (1969), aff'd Boston & Maine Railroad v. United States, 396 U.S. 27, 90 S.Ct. 196, 24 L.Ed.2d 142, the Interstate Commerce Commission, pursuant to the reference of the New York District Court in Baltimore & O. R. Co. v. New York, N. H. & H. R. Co., supra, determined that the per diem rates charged in the past had been unreasonable, and established reasonable rates for such periods, which rates were then adopted by the New York District Court as reasonable rates based on quantum meruit for each year in the past.

United Parcel Service of America, Inc., 260 F.Supp. 391, 412–413 (N.D.Cal.1966) citing United States v. Western Pac. R. Co., 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956), and General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361 (1940). The court made such referral by its orders of November 6, 1971 and January 20, 1972.

The court's questions were directed to the issues raised by the parties as hereinabove summarized; the I.C.C. by its Declaratory Order of February 28, 1972, Docket No. 35515, Contracts—Protective Service Between Pacific Fruit Express Company and The Akron, Canton & Youngstown Railroad Company, et al., (340 I.C.C. 754), answered these questions. (Marked as Court's Exhibit A in this suit and hereby referred to and by such reference made a part hereof).

## RE PROTECTIVE SERVICES

Concerning whether PFE activities constituted "protective services" within the meaning of its order, I.C.C. answered affirmatively to the effect that the activities of PFE in preparing, furnishing and servicing mechanical refrigeration units in PFE mechanical refrigerator cars to the defendants constitutes "protective service" within the purview of Sec. 1(14)(b); further, that the supplying of such mechanical protective service to the defendants by PFE was required to be covered by contractual arrangements submitted to I.C.C. for approval and that I.C.C. in its order of August 27, 1962, so contemplated. (See Answers to Court's Questions A, B, C, G, also N, O, P, Q, R and T—I.C.C. Declaratory Order of February 28, 1972, pp. 766–768; 770–774).

■ The court accepts the I.C.C.'s finding. This question, involving the meaning of a technical term in the transportation field is peculiarly within the special competence and expertise of the I.C.C. and its finding and conclusions, considered by this court to be fully supported by the record herein, are hereby adopted as the court's own finding and conclusion. See, El Dorado Oil Works v. United States, 328 U.S. 12, 19–21, 66 S.Ct. 843, 90 L.Ed. 1053 (1946); General American Tank Car Corp. v. El Dorado Terminal Co., 308 U.S. 422, 432–433, 60 S.Ct. 325, 84 L.Ed. 361 (1940); Swayne & Hoyt, Ltd. v. United States, 300 U.S. 297, 303–304, 57 S.Ct. 478, 81 L.Ed. 659 (1937); Interstate Commerce Comm'n v. Martin Brothers Box Co., 219 F.2d 811, 813 (9th Cir. 1955), cert. den., 350 U.S. 823, 76 S.Ct. 50, 100 L.Ed. 735 (1955). Further, the court finds upon the record herein that there is no genuine issue of fact concerning that issue and that plaintiff is entitled to a summary judgment thereon as a matter of law.

## RE DIVISION SHEET 7

With respect to the question whether Division Sheet 7 should be deemed still in effect between PFE and the railroads, it will be noted that the I.C.C. order provided that "those contracts *now on file with the Commission,* which have not been approved heretofore, be, and they are hereby approved upon the condition that they shall be superseded by new contracts filed in accord with the above regulation. . . ." (emphasis added)

■ The I.C.C. has answered that Division Sheet 7, although before it for informational purposes, was not one of the contracts officially "on file" with it at the time of its August 27, 1962 order. See, Answers to Court's Questions B and S—I.C.C. Declaratory Order of February 28, 1962, pp. 766, 772. This finding of the I.C.C., involving its own records, is likewise within its special competence and the court, finding it to be consistent with and supported by the record herein, adopts that finding as the court's own finding. It is clear, therefore, that Division Sheet 7 was not among the contracts that were temporarily approved by the I.C.C.

However, although Division Sheet 7 was not among the contracts falling within the temporary approval provision of the order, it was, nevertheless, as the I.C.C. has stated, in Answers to Court's Questions B and S, supra, "specifically

embraced in the terms of that order" as one of the contractual arrangements that was to be superseded as required by the order.

Even if we assume that Division Sheet 7 was on file with the I.C.C. and was among the contracts conditionally approved by it for a temporary 120 day period following the service of the 1962 order, the defendants failed to file any new or superseding contracts as required by the last paragraph of the Commission's 1962 order which clearly stated that such contracts were approved only *upon the condition* that they were to be superseded by new contracts filed in accord with the order.

## RE BASIS OF PLAINTIFFS' RIGHT OF ACTION

With respect to the issue whether the 1962 order affords a basis for direct recovery by PFE in this court of damages for its alleged losses, we may assume that neither the I.C.C. order, itself, nor Section 1(14)(b) is self-executing. However, PFE is not seeking in this suit to recover on that theory. Instead, PFE premises its right to recover damages upon its statutory right to sue under, and defendants' statutory liability under, Sections 8 and 9 in that the defendants have omitted to do what was required of them by Secs. 1(14)(b) and 16(7), i. e., enter into new or superseding contracts for the provision of mechanical protective service as required by the Commission's 1962 order.

■ Although the I.C.C. order of August 27, 1962, did not, itself, operate to invalidate, terminate or rescind any pre-existing contracts upon failure of the railroads to file new superseding contracts within the time and in the manner required by the order, (See Answer to Court's Question H, p. 769), the order was, as indicated in Answer to Court's Question J, p. 769, clearly "binding upon the carriers to comply therewith and failure to do so would subject them to enforcement action by the Commission."

The order was such that the failure or refusal of the railroads to file such new, superseding contracts in place of existing contracts, including Division Sheet 7, was a violation of Sec. 1(14)(b) and of the order itself. (Answer to Court's Question I, p. 769). In other words, although the I.C.C. order, requiring intermediate and terminal railroads to enter into such contracts did not, *itself*, constitute a contract between the parties in the sense that the order, itself, conferred substantive rights on car-line companies, like PFE, to recover their losses, (Answer to Question J, p. 769), the I.C.C. order was such that such a right to recover those losses would arise *either* "from the contracts required by the Commission's order" if and when entered into, *"or by other means"*—such other means obviously being action taken under either Sec. 16(12) or under Secs. 8 and 9, giving a right of action for injunctive and/or damage relief to persons injured by the failure or refusal of a railroad to comply with an order of the I.C.C. (See Answers to Court's Questions H, I and J, also K, L, M, N,—I.C.C. Declaratory Order of February 28, 1962, pp. 766–768).

Further, although the provision of the I.C.C. order of August 27, 1962, to the effect that car-lines, like PFE, were to bill, on a proportionate basis, the railroads on whose lines the mechanical service was rendered, was not self-executing and did not, itself, confer any substantive right on PFE, the I.C.C. order did require that such a provision was to be included in the new, superseding contracts into which the railroads were ordered to enter and the I.C.C. did contemplate that each participating railroad would be billed, on a proportionate basis, by car-line companies, like PFE, *"as provided in the contracts* to be filed with the Commission." (See Answers to Court's Questions D, E, F,—I.C.C. Declaratory order of February 28, 1972, pp. 767–768).

## RE VAGUENESS AND AMBIGUITY

■ Defendants also argue that the I.C.C.'s order is vague and ambiguous and therefore unreasonable, as various terms are not defined, including particularly the term "cost." In the first place, the Commission's 1962 order is presumed to be valid. B. & O. R. Co. v.

United States, 304 U.S. 58, 58 S.Ct. 767, 82 L.Ed. 1148 (1938); Toye Bros. Yellow Cab Co. v. Irby, 305 F.Supp. 905, 907 (D.Ct.La.1969); Braswell Motor Freight, Inc. v. United States, 297 F. Supp. 215, 218 (D.Ct.Miss.1969); United States v. Southern Ry. Co., 364 F.2d 86, 91 (5th Cir. 1966).

■ Further, collateral attack on a decision of the Interstate Commerce Commission is precluded by 28 U.S.C. Sec. 2321, which provides that any action to "suspend, enjoin, annul or set aside in whole or in part any order of the Interstate Commerce Commission . . ." must be brought pursuant to 28 U.S.C. Secs. 2321–25 which in turn prescribes that an injunction restraining the operation or execution of an I.C.C. order shall not be granted except by a three-judge federal court convened under 28 U.S.C. Sec. 2284. No other type of suit attacking a Commission decision directly or indirectly, is permitted. B. F. Goodrich Co. v. Northwest Industries, 424 F.2d 1349 (3d Cir. 1970); Toye Bros. Yellow Cab Co. v. Irby, 437 F.2d 806, 810 (5th Cir. 1971); REA Express v. Alabama Great So. R.R. Co., 343 F.Supp. 851 (D. Ct.N.Y.1972); United States v. Southern Ry. Co., 380 F.2d 49, 53–55 (4th Cir. 1957); United States v. Southern Ry. Co., 364 F.2d 86, 91–93 (5th Cir. 1955), cert. den. 386 U.S. 1031, 87 S.Ct. 1479, 18 L.Ed.2d 592.

■ Finally, it will be noted that the order does not merely order that new or superseding contracts be submitted by the railroads; it goes further to prescribe the provisions with which the contracts are to conform in substance and, with respect to "cost," prescribes in Par. d(i)(ii) the matters to be included in the determination of cost.

This court is satisfied that the I.C.C.'s order is not vague or ambiguous; that it is sufficiently clear to apprise defendants of that which is required of them. See, e. g., United States v. Southern Railway Co., 364 F.2d 86, at 95–96 (5th Cir. 1966).[7]

## CONCLUSIONS ON ISSUE OF LIABILITY FOR DAMAGES

For the foregoing reasons the court finds that defendants and each of them have failed and refused since 1962 to comply with the I.C.C. order of August 27, 1962 in that they have failed and refused to enter into or to submit to I.C.C. for approval on or before 120 days after the effective date of said order (which time was extended by the I.C.C. to June 10, 1963), new or superseding contracts, either with PFE or expressly for its benefit, covering protective services performed and rendered to them or in their behalf by plaintiff; that said failure and refusal is a violation of said order and of the law within the meaning of Sections 8 and 9.

■ Said issue has been presented and argued by the parties upon the theory that there are no genuine issues as to any material fact—only disagreement on matters of law pertaining to the rights and liabilities of the parties stemming from the I.C.C. order of August 27, 1962.[8] The court agrees and concludes from the record that plaintiff is entitled as a matter of law, pursuant to Sections 8 and 9 and Sections 16(7) and 1(14) (b), (and upon quantum meruit as an

---

7. It is apparent that the words "cost" and "costs" of protective service are "words of art" in the protective service field, as they have been used for over 30 years by the Commission in Ex Parte 137 proceedings alone. See references to these terms, in connection with car-line cost, in the following Ex Parte 137 decisions: 246 I. C.C. 145, 155 (1941); 253 I.C.C. 21, 22 (1942); 255 I.C.C. 729, 732 (1943); 256 I.C.C. 454 (1943); 272 I.C.C. 243, 253 (1948); 276 I.C.C. 323, 324–25 (1949); 268 I.C.C. 531, 534 (1950). Indeed, some of the defendant railroads have filed contracts with the Commission containing general provisions to the effect that mechanical protective services are to be performed at "cost," and have apparently been able to ascertain their responsibilities under the Commission's orders in Ex Parte 137 proceedings. (See, Ex Parte 137, 321 I.C.C. 758, 759 (1963).

8. Defendants have conceded on the record that there are no factual issues before the court. (See, Rep. Tr. May 9, 1972, p. 45).

additional basis of action) to a judgment in its favor on the issue of the liability of the defendant railroads to it for damages occurring since January 1, 1964—essentially the difference between the amount plaintiff has been paid under said Division Sheet 7 arrangement, or otherwise, and the amount which plaintiff would have received if said defendants had complied with said order by contracting with plaintiff, or among themselves for plaintiff's express benefit, as required by said I.C.C. order of August 27, 1962—together with interest, attorneys' fees and costs of suit.

The court reserves power to make such further orders as may be necessary to determine the issue of the amount of said damages, interest and attorney fees.

### RE INJUNCTIVE RELIEF

PFE also seeks an injunction, pursuant to Section 16(12), enjoining defendants from further failure or refusal to comply with the I.C.C. order of August 27, 1962, and ordering the respective defendants to enter into contracts with PFE or among themselves expressly for its benefit, in the manner prescribed by said order and to file such contracts with I.C.C. for its approval. The United States and intervenor I.C.C. join in the PFE motion for such injunctive relief.

Section 16(12) provides that the I.C.C. may apply to District Court for injunction or other proper process to enforce its orders; that section also provides that any party injured may apply to District Court for the enforcement of such an order and the court may enforce obedience by injunction or other proper process.

 Defendants' failure and refusal to comply with an I.C.C. order issued for the benefit of car-lines, such as PFE, is sufficient to constitute PFE a party injured; also I.C.C. which has joined in the PFE motion as an intervenor would itself be entitled to such injunctive relief under Sec. 16(12).

Since, as already concluded, there is no genuine issue as to any material fact and since it appears that plaintiff is also entitled to judgment in the form of in-junctive relief as a matter of law pursuant to Sec. 16(12), the court concludes that defendant railroads and each of them, and their respective officers, agents, servants, employees and attorneys, and all persons in active concert or participation with them, who receive actual notice of this order by personal service or otherwise, should be, and they are hereby enjoined from continuing to fail, neglect or refuse to comply with that certain order of the I.C.C. dated August 27, 1962, and, further, shall, within 60 days from the date of this order, or within such further time as the court may hereafter order, obey said order by forthwith entering into good faith negotiations with plaintiff and entering within such period, into new, superseding contracts with plaintiff, or among themselves expressly for the benefit of plaintiff, to be effective January 1, 1973, (the beginning of PFE's annual accounting period) covering protective services heretofore or now being performed under the provisions of Division Sheet 7, or any other existing contract—said new, superseding contracts to conform in substance with the provisions of subsections (b), (c), (d), (e), (f) and (g) of said I.C.C. order of August 27, 1962—and, within said period, submit said new, superseding contracts to I.C.C. for approval under Sec. 1(14)(b) and Sec. 16(7)—at defendants' expense and diligently prosecute said submission to the end that approval of said contracts may be obtained as soon as possible.

It is further ordered that, if such new superseding contracts have not been submitted to I.C.C. within the period herein fixed on account of failure of the parties to agree upon the form or content of such contracts, the parties shall, within 20 days from the expiration of said initial 60 day period, petition I.C.C. for its approval or disapproval of such provisions as to which said parties do agree and also for approval, disapproval or modification of such further provisions, proposed by either party, as to which the parties cannot agree and for such further instructions or further orders as I.C.C. may deem necessary concerning the form

or content of such contracts as are herein ordered consistent with its previous orders of August 27, 1962, February 28, 1972 and this order. The court desires that such I.C.C. consideration, if required, take place as expeditiously as possible.

The court reserves power to supervise, modify or separately formalize the injunctive provisions of this order, and to enforce the same, but compliance with the above procedure, and with any I.C.C. order made as a result thereof and consistent with the I.C.C. previous orders of August 27, 1962, February 28, 1972 and this order, shall be deemed compliance to that extent with this order and, likewise, failure or refusal of any party to follow such procedure shall be deemed to that extent a non-compliance with this order.

On the expiration of the 60 day period above fixed, or the expiration of such extension thereof, as may be hereafter made, the parties shall jointly or separately report to this court upon the progress of compliance with the injunctive order herein made.

This memorandum constitutes the findings and conclusions of the court to the extent that such findings and conclusions may be necessary.