524 F.2d 1025
 PACIFIC FRUIT EXPRESS COMPANY, Plaintiff-Appellee,
Interstate Commerce Commission and United States of America,
InterveningPlaintiffs-Appellees,
v.
AKRON, CANTON & YOUNGSTOWN RAILROAD COMPANY et al.,
Defendants-Appellants.
 No. 73-2184.
 United States Court of Appeals,
Ninth Circuit.
 Aug. 28, 1975.
 
 1
 Gordon Johnson (argued), Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., for defendants-appellants.
 
 
 2
 Herbert A. Waterman (argued), San Francisco, Cal., for plaintiff-appellee.
 
 OPINION
 
 3
 Before KOELSCH and CHOY, Circuit Judges, and KELLEHER,* District Judge.
 
 KELLEHER, District Judge:
 
 4
 Appellee Pacific Fruit Express Company ("PFE") brought in the District Court an action for damages under 49 U.S.C. §§ 8 and 9 and for injunctive relief under 49 U.S.C. § 16(12)[1] against 90 Mid-Eastern, Eastern, and Southern railroad common carriers for alleged continuing violation of a 1962 order of the Interstate Commerce Commission ("ICC"). The District Court granted the motion of PFE for summary judgment on the liability issue and the motion of PFE and of the intervenor, ICC, for injunctive relief.
 
 
 5
 This appeal was taken by 56 of the defendant railroads, invoking the jurisdiction conferred by 28 U.S.C. § 1291. The Judgment and Order[2] appealed from recited for its foundation: (1) the prior order of the Court granting the motions of plaintiff and intervenor, ICC, for summary judgment, and (2) the conclusions of the Court as theretofore set forth in its extensive Memorandum of Decision.[3] By its Memorandum of Decision, the Court found that there was no genuine issue as to any material fact and upon what it deemed the undisputed material facts granted the injunctive relief requested.
 
 
 6
 * PFE, a car-line company wholly owned by the Union Pacific Railroad Company and Southern Pacific Transportation Company is engaged in the business of furnishing to railroads refrigerated units and supplying Mechanical Protective Service ("MPS") for perishable commodities against heat and cold.
 
 
 7
 The use of PFE cars on appellants' lines is occasioned by the fact that Union Pacific and Southern Pacific, as originating carriers on eastbound shipments, select these PFE cars to transport perishables to the East. Appellant railroads as common carriers are required by law to accept, and do accept, such cars at interchange points to transport perishables over their respective lines to ultimate destinations. The mechanical units in the refrigerated cars are used by appellants to supply MPS.
 
 
 8
 These units are designed to furnish complete continuous protection to perishables on all railroads over which the refrigerator car moves. Both PFE's parent carriers and appellants are parties to joint tariffs which cover the movement of perishables over their respective lines. These tariffs provide for a charge to the shippers for the movement of the commodity and a separate charge for protective service. The protective service charges are divided among all the carriers in the line haul movement in accordance with Division Sheet 7.[4]
 
 
 9
 By its District Court action, PFE sought a mandatory injunction under 49 U.S.C. § 16(12) to require appellant railroads to comply with an order of the ICC entered August 27, 1962. Ex Parte No. 137, Contracts for Protective Services, 318 I.C.C. 111 (1962). The 1962 ICC order in part required all rail carriers to submit to the ICC for its approval within a specified time new contracts for the supply of MPS. PFE also sought by its action damages under 49 U.S.C. §§ 8 and 9 in excess of 12.5 million dollars essentially the difference between the appellant railroads' payments to PFE for MPS under pre-1962 ICC order contracts and the amount PFE would have received had new contracts been entered into pursuant to the 1962 ICC order.
 
 The 1962 ICC order provides in part:
 
 10
 "(a) All rail carriers and express companies receiving protective services under any contracts, agreements, or arrangements requiring approval under section 1(14)(b) of the Interstate Commerce Act shall submit for approval, on or before 120 days after the effective date of this order, new or superseding contracts covering protective services performed under contracts now on file with the Commission as well as those performed under the provisions of Division Sheet 7. . . . The contracts required herein to be filed shall supersede all prior contracts, including Division Sheet 7, and such contracts and those filed thereafter shall conform in substance to the provisions set forth in subsections (b), (c), (d), (e), (f), and (g).
 
 
 11
 "It is further ordered, That those contracts now on file with the Commission which have not been approved heretofore, be, and they are hereby approved upon the condition that they shall be superseded by new contracts filed in accord with the above regulations." 318 I.C.C. at 138. (Emphasis added.)
 
 
 12
 We note that the Judgment and Order appealed from granted only the injunctive relief sought, the Court by its Memorandum of Decision having expressly reserved to later proceedings determination of the issue of damages.
 
 
 13
 After the action was filed in the District Court, the railroads sought a stay of the proceedings, claiming that the subject matter was within the primary jurisdiction of ICC. Thereafter, the District Court submitted questions, formulated with the assistance of all parties concerned, to the ICC requesting a clarification and interpretation of its 1962 order.
 
 
 14
 Following the answers by the ICC,[5] which the District Court later adopted as part of its findings when it granted summary judgment, the United States, as a statutory defendant pursuant to 28 U.S.C. § 2322, with respect to the injunction count, was realigned and became a party plaintiff. Thereafter, as noted above, ICC sought and was allowed to intervene as a party plaintiff with respect to the injunctive relief sought.
 
 II
 The appeal raises the following issues:
 
 15
 1. Did the District Court commit error in granting summary judgment?
 
 
 16
 2. Was there on the part of the plaintiff PFE under the 1962 order of the ICC a substantive right enforceable in the District Court?
 
 
 17
 3. Was there such a relationship between the railroads and PFE as to permit District Court enforcement under 49 U.S.C. § 1(14)(b), absent a contractual right between the parties?
 
 
 18
 4. Was the 1972 order of the ICC issued in violation of the Administrative Procedure Act, and hence unenforceable by the District Court?5. Were the mandatory injunction portions of the District Court's order in excess of its powers under the law?
 
 
 19
 Each of the foregoing issues was considered by the District Court and, we think, rightly decided. Accordingly, and for the reasons more particularly hereafter set forth, we affirm the order and judgment of the Court below.
 
 III
 
 20
 In reviewing the grant of summary judgment, we apply the same rule that is initially applied by the trial court under Rule 56(c) Federal Rules of Civil Procedure.[6] Soria et al. v. Oxnard School District Board of Trustees, 488 F.2d 579, 586 (9th Cir. 1973); Caplan v. Roberts, 506 F.2d 1039, 1042 (9th Cir. 1974). The rule is simply stated: "Summary judgment is 'proper only where there is no genuine issue of any material fact or where viewing the evidence and the inferences which may be drawn therefrom in the light most favorable to the adverse party, the movant is clearly entitled to prevail as a matter of law.' " 506 F.2d at 1042.
 
 
 21
 In arguing that the District Court erred in granting summary judgment, appellants contend that the record below presented two genuine issues of fact: (1) What was the status of Division Sheet 7, viz., had it or had it not been filed with, and approved as a contract, by the ICC? (2) Was PFE a "party injured" who could sue for an injunction under the provision of Section 16(12) of the Interstate Commerce Act?[7]
 
 
 22
 It appears that the record before the ICC was ambiguous as to whether Division Sheet 7 was on file before the Commission and as to whether the sheet was a contract approved by the Commission. But the Commission's finding as expressed in answer to one of the District Court's questions was that Division Sheet 7 was not on file before it and hence was not approved by it. The Court below adopted that finding as one within the special competence of the ICC and as not presenting a factual dispute before the Court. Furthermore, the District Court found that even if Division Sheet 7 was on file and approved by the Commission, it was a contract which was required under the 1962 order to be superseded by a new contract filed in accordance with the order, and since the railroads had failed to meet that obligation to file such new contract, there was a violation of the order. We think that the Court was correct, for even under the adjunct to the summary judgment rule, requiring that the evidence and the inferences which may be drawn therefrom be viewed in the light most favorable to the adverse party, see Caplan v. Roberts, supra, there was here presented no genuine issue of fact.
 
 
 23
 Similarly with respect to appellants' contention that a material issue of fact is presented as to whether PFE was a "party injured," the Court below had a record on which no material dispute existed with regard to the injurious consequences to PFE by reason of the failure of the appellants to enter into the negotiations for a new and superseding contract. The ICC order created an obligation on the part of appellants to negotiate new contracts. Also, it is undisputed on the record that the railroads failed over many years to perform this obligation. Thus, the only factual question presented as to whether PFE was an injured party relates to the question of how much injury and consequential damage was suffered. The issue as to quantum of damages was reserved by the Court below for future proceedings, to wit, a separate trial on the issue of damages. This being so, the Court below had no need to concern itself with the question of damages, or indeed whether there was a factual dispute concerning the nature and extent of the damages suffered by appellee. Clearly, therefore, as a matter of law, there was no genuine issue of fact to be resolved, and summary judgment was wholly proper.
 
 
 24
 There is no substance to appellants' contention that somehow PFE had no substantive right enforceable in the District Court by reason of the 1962 order of ICC and that hence no right to injunctive relief was obtainable under § 16(12) of the Act. The contention appears to be that the 1962 order conferred no substantive right on PFE for the direct payment of money, which is correct. But that is not to say that the right under the order to have the railroads enter into contract negotiations, a result of which would provide perhaps for more favorable rights to obtain money, is not in itself a substantive right subject to enforcement in the District Court under § 16(12) of the Act. The very ground of the complaint to which the 1962 order addressed itself was the refusal of the railroads to do that which they should have done, to wit, enter into new contracts, the consequences of which would have been to provide for the payment of money by the railroads to PFE. Clearly, the deprivation of the right to a contract which the order compelled was sufficient in itself to be regarded as a "substantive right." See New York, Susquehanna & Western R. Co. v. Penn. Central Co., 287 F.Supp. 704 (S.D.N.Y. 1968). Moreover, whether PFE was injured or not, there is no statutory requirement that ICC, which joined in the motion, show injury. United States v. City of Jackson, 318 F.2d 1 (5th Cir. 1963).
 
 
 25
 This issue last dealt with is in some sense intertwined with the further contention made by appellants that, there being no contractual rights between the parties, there is no such relationship as is necessary under 49 U.S.C. § 1(14)(b) to invoke the power of the District Court to enforce the rights. We are satisfied that the effect of the ICC order, whether it established a contractual relationship, or merely ordered that a contractual relationship be entered into, has the effect of placing the parties in such relationship to one another as to permit enforcement under § 16(12).
 
 
 26
 There is no merit to appellants' contention that there was in some manner a failure to comply with the requirements of the Administrative Procedure Act, or that there was in some way a failure to exhaust administrative remedies before the Commission. The Court below ordered enforcement of the 1962 order. There is no issue in the record here as to whether that order was made in full compliance with requirements of the Administrative Procedure Act for notice and hearing. By strained construction, appellants would have us regard ICC responses to the District Court questions as constituting some new "1972 order," greater in breadth than the 1962 order, and promulgated by ICC without the requisite notice or hearing. We reject this contention, for however we characterize the ICC response of 1972, as "order" or mere response, any challenge thereto must have been made in the Court referring such question to the ICC within 90 days from the date that the order of the ICC becomes final. 28 U.S.C. § 1336(b) and (c).[8] Appellants made no attack on these responses; indeed, they embraced with vigor, in the Court below, those responses. They are not permitted here for the first time, contrary to § 1336, to make their attack.
 
 
 27
 We find little substance and less merit to appellants' contention that the injunction was defective because it exceeded the District Court's authority. While receding not at all from its previous position that injunctive relief by way of summary judgment was wholly improper, appellants attack certain portions of the injunction as excessive. It is contended that the injunctive power of the District Court was exhausted upon the making of its order enjoining appellants from continuing failure to comply with the 1962 order. It is contended that the Court has power to enforce only that which the ICC has the power to promulgate and that the latter power is limited to the giving or withholding of approval of protective service contracts when filed. It is said that § 1(14)(b) does not grant to ICC any compulsory power to make parties enter into contracts, and particularly that power is lacking on the part of the ICC to dictate that any protective service contract be entered into on a retroactive basis. We consider this argument specious. In the face of the record here, we find that the ICC's 1962 order was within its power to promulgate and that the District Court, pursuant to the broad power to compel obedience under § 16(12) was within its jurisdiction and had the power to mandate compliance with that order.
 
 
 28
 Judgment affirmed.
 
 
 
 *
 Honorable Robert J. Kelleher, United States District Judge, Central District of California, sitting by designation
 
 
 [1]
 49 U.S.C. § 16(12):
 "Proceedings to enforce orders other than for payment of money. If any carrier fails or neglects to obey any order of the commission other than for the payment of money, while the same is in effect, the Interstate Commerce Commission or any party injured thereby, or the United States, by its Attorney General, may apply to any district court of the United States of competent jurisdiction for the enforcement of such order. If, after hearing, such court determines that the order was regularly made and duly served, and that the carrier is in disobedience of the same, such court shall enforce obedience to such order by a writ of injunction or other proper process, mandatory or otherwise, to restrain such carrier, its officers, agents, or representatives, from further disobedience of such order, or to enjoin upon it or them obedience to the same."
 
 
 [2]
 The operative portions of the order are as follows:
 "ORDERED, ADJUDGED AND DECREED that defendant railroads and each of them, and their respective officers, agents, servants, employees and attorneys, and all persons in active concert or participation with them, who receive actual notice of this order by personal service or otherwise, should be, and they are hereby enjoined from continuing to fail, neglect or refuse to comply with that certain order of the I.C.C. dated August 27, 1962, and, further, shall, within 60 days from the date of this order, or within such further time as the court may hereafter order, obey said order by forthwith entering into good faith negotiations with plaintiff and entering within such period, into new, superseding contracts with plaintiff, or among themselves expressly for the benefit of plaintiff, to be effective January 1, 1973 (the beginning of PFE's annual accounting period) covering protective service heretofore or now being performed under the provisions of Division Sheet 7, or any other existing contract said new, superseding contracts to conform in substance with the provisions of subsections (b), (c), (d), (e), (f) and (g) of said I.C.C. order of August 27, 1962 and, within said period, submit said new, superseding contracts to I.C.C. for approval under Sec. 1(14)(b) and Sec. 16(7) at defendants' expense and diligently prosecute said submission to the end that approval of said contracts may be obtained as soon as possible.
 "It is further ordered that, if such new superseding contracts have not been submitted to I.C.C. within the period herein fixed on account of failure of the parties to agree upon the form or content of such contracts, the parties shall, within 20 days from the expiration of said initial 60 day period, petition I.C.C. for its approval or disapproval of such provisions as to which said parties do agree and also for approval, disapproval or modification of such further provisions, proposed by either party, as to which the parties cannot agree and for such further instructions or further orders as I.C.C. may deem necessary concerning the form or content of such contracts as are herein ordered consistent with its previous orders of August 27, 1962, February 28, 1972, and this order. The court desired that such I.C.C. consideration, if required, take place as expeditiously as possible.
 "The court reserves power to supervise the injunctive provisions of this order, and to enforce the same, but compliance with the above procedure, and with any I.C.C. order made as a result thereof and consistent with the I.C.C. previous orders of August 27, 1962, February 28, 1972, and this order, shall be deemed compliance to that extent with this order, and, likewise, failure or refusal of any party to follow such procedure shall be deemed to that extent a noncompliance with this order.
 "On the expiration of the 60 day period above fixed, or the expiration of such extension thereof, as may be hereafter made, the parties shall jointly or separately report to this court upon the progress of compliance with the injunctive order herein made."
 
 
 [3]
 Pacific Fruit Express Co. v. Akron, Canton & Youngstown R. Co., 355 F.Supp. 700 (N.D.Cal.1973)
 
 
 [4]
 As stated by the District Court in its Memorandum of Decision, 355 F.Supp. at 703, n. 1:
 "This Division Sheet 7 is an arrangement among the railroads themselves, issued by their National Perishable Freight Committee as agent for substantially all railroads. Under its provisions, 80 percent of the revenue collected by the railroads under their respective tariffs for mechanical protective service are paid by the participating railroads to the railroad initially handling the shipment, which percentage is in turn paid over to the car owner, like PFE, for the mechanical refrigeration units in its cars. The remaining 20 percent of the tariff revenue is divided among all the railroads participating in the particular shipment. This is the basis on which PFE has been compensated."
 
 
 [5]
 See the ICC's Declaratory Order of February 28, 1972, Contracts Protective Service Between Pacific Fruit Express Company and The Akron, Canton & Youngstown Railroad Company, et al., 340 I.C.C. 754 (1972)
 
 
 [6]
 Rule 56(c), F.R.C.P., provides, in pertinent part: "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."
 
 
 [7]
 It should be noted that the District Court considered that defendants had conceded on the record that there were no factual issues before the Court. 355 F.Supp. at 708, n. 8. We view the matter in light of their contention on appeal that no such concession was made
 
 
 [8]
 28 U.S.C. § 1336(b) and (c) states:
 "(b) When a district court or the Court of Claims refers a question or issue to the Interstate Commerce Commission for determination, the court which referred the question or issues shall have exclusive jurisdiction of a civil action to enforce, enjoin, set aside, annul, or suspend, in whole or in part, any order of the Interstate Commerce Commission arising out of such referral."
 "(c) Any action brought under subsection (b) of this section shall be filed within 90 days from the date that the order of the Interstate Commerce Commission becomes final." (Emphasis added.)